**OLYMPUS CORPORATION,**
**Plaintiff–Appellant,**

**v.**

**The UNITED STATES, Defendant–**
**Appellee.**

**No. 96–5002.**

United States Court of Appeals,
Federal Circuit.

Oct. 23, 1996.

Charles J. Wood, Jr., Wallingford, CT, argued, for plaintiff–appellant.

Brendan Collins, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, argued, for defendant–appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Robert M. Hollis, Assistant Director.

Before MAYER, LOURIE, and RADER, Circuit Judges.

LOURIE, Circuit Judge.

Olympus Corporation appeals from the order of the United States Court of Federal Claims, granting the government's motion for summary judgment in this contract action. *Olympus Corp. v. United States*, No. 94–51C (Fed.Cl. Sept. 6, 1995). Because the court did not err in determining that Olympus was not entitled to an equitable adjustment under a Differing Site Conditions clause for delays caused by conditions that developed after the contract was executed, we affirm.

## BACKGROUND

The parties do not dispute the material facts on this appeal. On March 10, 1987, Olympus entered into a fixed-price construction contract with the United States under which Olympus agreed to pave the plant yards at the Stratford Army Engine Plant in Stratford, Connecticut.[1] The contract included a standard Differing Site Conditions clause which provided, in relevant part:

(a) The Contractor [Olympus] shall promptly, and before the conditions are disturbed, give a written notice to the Contracting Officer of (1) subsurface or latent physical conditions at the site which differ materially from those indicated in this contract, or (2) unknown physical conditions at the site, of an unusual nature, which differ materially from those ordinarily encoun-

tered and generally recognized as inherent in the work of the character provided for in the contract.

(b) The Contracting Officer shall investigate the site conditions promptly after receiving the notice. If the conditions do materially so differ and cause an increase or decrease in the Contractor's cost of, or the time required for, performing any part of the work under this contract, whether or not changed as a result of the conditions, an equitable adjustment shall be made under this clause and the contract modified in writing accordingly.

Federal Acquisition Regulation (FAR), 48 C.F.R. § 52.236–2 (1995). On April, 18, Olympus received a Notice to Proceed from the Contracting Officer. One month later, Textron Lycoming, an independent government contractor that operated the plant, accidentally cut open an underground oil pipe while clearing a trench in a plant yard. Oil escaped from the pipe, contaminating the soil and preventing Olympus from paving the plant yard.

Soon thereafter, Textron employees went on strike, picketing all entrances to the plant and preventing Olympus employees from accessing the plant yards for nearly two months. After the strike ended, Olympus spent one week assisting Textron's environmental contractor in the removal of the contaminated soil. On August 2, Olympus resumed paving.

Olympus timely notified the Contracting Officer of both the contamination and strike delays and requested an equitable adjustment to the contract to provide a 69–day time extension and a price modification to account for Olympus's additional costs of $107,988.79. The Contracting Officer allowed the requested time extension, but granted a price increase of only $5,358, attributable solely to the contamination delay. Olympus rejected this proposal and submitted a claim to the Contracting Officer, demanding both additional costs and a final decision. After the Contracting Officer issued a final decision in which he rejected

---

1. The contract price and completion date terms were modified several times. Ultimately, Olym-

pus was to receive $1,426,179 and was to finish paving by September 5, 1988.

Olympus's claims, Olympus filed suit in the United States Court of Federal Claims seeking to recover all of its additional costs.

The Court of Federal Claims granted the government's motion for summary judgment and dismissed Olympus's complaint. In reaching its decision, the court stated:

> [Olympus] relies upon paragraph 45 of the contract, the Differing Site Conditions Clause, as the legal basis for recovery under both its soil contamination delay and the strike delay. The Differing Site Conditions Clause, however, governs conditions existing at the time the contract was entered into. The clause provides no foundation for [Olympus's] delay claim. (citations omitted)

> The soil contamination did not exist at the time the contract was executed. Similarly, there is no dispute that the Textron employees were not on strike at the time the contract was executed. Accordingly, [Olympus's] reliance upon the Differing Site Conditions Clause as the basis for its recovery is incorrect as a matter of law and must be rejected.

The court also noted that Olympus could not recover the costs of delays caused by an independent contractor. Finally, the court noted that under this fixed-price contract, Olympus had assumed the risk of unexpected costs such as those associated with labor unrest. Olympus now appeals to this court.

## DISCUSSION

■ When, as here, there is no genuine issue as to any material fact, summary judgment is appropriate if the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed.Cir.1987). Furthermore, summary judgment is appropriate where the sole dispute concerns the proper interpretation of a public contract, a question of law which we review *de novo. Muniz v. United States,* 972 F.2d 1304, 1309 (Fed.Cir.1992); *P.J. Maffei Bldg. Wrecking Corp. v. United States,* 732 F.2d 913, 916–17 (Fed.Cir.1984). Olympus only contests the trial court's interpretation of the Differing Site Conditions clause, in particular raising the issue whether the Differing Site Conditions clause applies only to conditions existing when the contract was executed, not to conditions that develop during performance.

Olympus argues that because the Differing Site Conditions clause was not expressly limited to conditions that existed when the contract was executed, applying such a limitation impermissibly incorporates the government's subjective intent into the contract. Accordingly, Olympus also argues that the Differing Site Conditions clause shifted the risk of all unanticipated adverse site conditions to the government.

The government argues that the Court of Federal Claims did not err in its interpretation of the Differing Site Conditions clause. The government construes the clause to apply only to conditions existing at the time of contracting. We agree with the government's interpretation.

■ The Differing Site Conditions clause and its similarly-worded predecessor, the Changed Conditions clause, have been used in government contracts and interpreted by the courts for over half a century. *See United States v. Rice,* 317 U.S. 61, 66–68, 63 S.Ct. 120, 123–24, 87 L.Ed. 53 (1942) (interpreting Changed Conditions clause); 32 Fed.Reg. 16,268, 16,270 (1967) (explaining changes to title and text of clause). *See generally* Richard J. Bednar et al., Construction Contracting 568–615 (1991). The purpose of these clauses has been to shift the risk of adverse subsurface or latent physical conditions from the contractor, who normally bears such risk under a fixed-price contract, to the government. *See United States v. Spearin,* 248 U.S. 132, 136, 39 S.Ct. 59, 61, 63 L.Ed. 166 (1918) ("Where one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation, because unforeseen difficulties are encountered."). The government has feared that without this clause, contractors would inflate their bid prices to account for the costs of investigating unknown conditions, such as subsurface soil

conditions. As aptly stated by our predecessor court, the Court of Claims:

> The purpose of the changed conditions clause is thus to take at least some of the gamble on subsurface conditions out of bidding. Bidders need not weigh the cost and ease of making their own borings against the risk of encountering an adverse subsurface, and they need not consider how large a contingency should be added to the bid to cover the risk. They will have no windfalls and no disasters. The government benefits from more accurate bidding, without inflation for risks which may not eventuate. It pays for difficult subsurface work only when it is encountered and was not indicated in the logs.

*Foster Constr. C.A. & Williams Bros. Co. v. United States,* 193 Ct.Cl. 587, 435 F.2d 873, 887 (1970); *see also Iacobelli Constr., Inc. v. County of Monroe,* 32 F.3d 19, 23 (2d Cir. 1994) ("To prevent contractors from bidding on a worst-case-scenario basis, government construction contracts contain a differing site conditions clause.").

While the Differing Site Conditions clause is a risk-shifting device, it does not, as Olympus argues, shift the risk of all unanticipated adverse site conditions from the contractor to the government. Rather, the government bears only those risks that encourage "more accurate bidding." *Foster Constr.,* 435 F.2d at 887. Those risks are shifted to the government so that contractors will not add to their bids the cost of assessing whether adverse subsurface conditions exist or the cost of confronting such conditions if and when they are encountered.

Olympus asserts that an adverse condition need not have existed when a contract was executed in order for it to be entitled to an equitable adjustment under the Differing Site Conditions clause. We do not so read the clause. Our precedent has long imposed a temporal limitation on the applicability of the Differing Site Conditions clause and the Changed Conditions clause. *See John McShain, Inc. v. United States,* 179 Ct.Cl. 632, 375 F.2d 829, 833 (1967); *Arundel Corp. v. United States,* 96 Ct.Cl. 77, 116 (1942). These clauses have only been applied to conditions existing when a contract was executed, not to those that developed during performance.

In *John McShain,* our predecessor court, by whose precedent we are bound, *South Corp. v. United States,* 690 F.2d 1368, 1370–71 (Fed.Cir.1982), denied an equitable adjustment based upon a Changed Conditions clause under circumstances similar to those confronted by Olympus. McShain sought an equitable adjustment based upon the costs it incurred when a local water main broke, resulting in a "cave-in" at the contract site. 375 F.2d at 831–32. The court denied relief, noting that the Changed Conditions clause "refers to a latent condition at the time of contracting not something discovered later." *Id.* at 833. Likewise, in *Arundel,* the Court of Claims denied an equitable adjustment for flood damage incurred during the course of performance, stating that the Changed Conditions clause "refers to a latent condition existing at the time the contract was entered into, not to one occurring thereafter." 96 Ct.Cl. at 116. *See* 4A John Cosgrove McBride, Government Contracts § 29.10[1] (rel. 378 1996) ("A changed condition, as defined in the standard differing site conditions clause, is limited to physical conditions in existence when the contract is made and does not comprehend physical conditions which come into being only after the contract has been executed or work commenced."); Bednar et al., *supra,* at 575 ("Technically, the language of the [Differing Site Conditions] clause does not specifically refer to a condition existing at the time of contracting. But such has been the general interpretation by Federal courts for almost half a century."). *Cf. Hoffman v. United States,* 166 Ct.Cl. 39, 340 F.2d 645, 648–51 (1964) (reasoning, arguably in dictum, that the Changed Conditions clause also applies to conditions that existed when the Notice to Proceed was issued).

Olympus argues, notwithstanding the weight of authority, that we should interpret the contract language differently, attributing to it only its "objective" meaning. Because the temporal limitation is not explicit in the contract, Olympus argues we should disregard it as merely a manifestation of the government's subjective intent. We disagree. Although we interpret public con-

tracts according to their "ordinary and commonly accepted meaning," *Brunswick Corp. v. United States,* 951 F.2d 334, 336 (Fed.Cir. 1991), we also do so from the vantage point of a "'reasonable and prudent' contractor." *P.J. Maffei,* 732 F.2d at 917. Such a contractor would have been familiar with the long-standing limitation on a Differing Site Conditions clause to conditions existing when the contract was executed. Moreover, we are bound by precedent. Therefore, consistent with our precedent, we hold that the Court of Federal Claims did not err in interpreting the Differing Site Conditions clause to apply only to conditions existing at the time of contracting.

Having interpreted the Differing Site Conditions clause to apply only to conditions existing when the contract was executed, we address Olympus's specific claims. Olympus seeks an equitable adjustment based upon the delay caused by the soil contamination. However, it is undisputed that the oil pipe, the sole source of the contaminants, was not cut open until May 19, nearly ten weeks after the contract was executed. Therefore, the soil was not contaminated when Olympus executed the contract. This delay, caused by an adverse physical condition which arose only after performance began, was not subject to the Differing Site Conditions clause. Accordingly, Olympus was not entitled, under the Differing Site Conditions clause, to an equitable adjustment for the delay caused by the soil contamination.

Olympus also seeks an equitable adjustment based upon the delay caused by the Textron strike. It is undisputed that the strike did not begin until May 30, several weeks after the contract was executed and the notice to proceed issued. Thus, Olympus is likewise not entitled under the Differing Site Conditions clause to an equitable adjustment for the delay caused by the strike.

In addition to the temporal limitation, on which we principally base our decision, it is also clear that the Differing Site Conditions clause applies only to "physical" conditions at the work site, not to actions of third-parties that deny the contractor access to the work site. *See generally* McBride, *supra,* § 29.60[6] (rel. 378 1996) ("Interference with the contractor's performance is not generally considered a differing site condition."). While interference by the government with a contractor's access to the work site may constitute a breach of the government's duty to cooperate, the government is not responsible for third-party actions such as labor strikes that delay a contractor's performance, absent a specific contractual provision. *See McNamara Constr., Ltd. v. United States,* 206 Ct.Cl. 1, 509 F.2d 1166, 1169–70 (1975). Because Olympus points to no provision of the contract that would impose such responsibility upon the government, it has not shown that it is entitled to an equitable adjustment for costs associated with delays caused by the Textron strike.

Because Olympus relies solely on its interpretation of the Differing Site Conditions Clause, which we do not adopt, we need not address the government's remaining arguments.

### CONCLUSION

The Differing Site Conditions clause did not shift to the government the costs of the delays associated with either the soil contamination or the strike. Accordingly, the Court of Federal Claims did not err in holding that the clause provided no foundation for Olympus's claim that it was entitled to an equitable adjustment, and we affirm its decision.

*AFFIRMED.*