**J. Leonard SPODEK, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 98–693C.

United States Court of Federal Claims.

June 8, 2000.

James L. Quarles III, Hale and Dorr, LLP, Washington, DC, attorney of record, for the plaintiff. Kerry P. Rubin, Hale and Dorr, LLP, Washington, DC, of counsel.

Doris S. Finnerman, Civil Division, Commercial Litigation Branch, United States Department of Justice, Washington, DC, attorney of record, for the defendant.

## ORDER

HORN, Judge.

The instant case is one of a large number of disputes between J. Leonard Spodek and the United States Postal Service (USPS) in various parts of the country and in various state and federal courts. These disputes are based on leases the Postal Service entered into with the plaintiff for use of buildings he owns. The lease at issue in the above-captioned case is for property located in Brookshire, Texas. The case was initiated when the USPS offset money allegedly owed by the plaintiff under leases for other postal facilities in Freeport, Texas and Camden, New Jersey, from rents due on the Brookshire, Texas facility. According to the plaintiff, however, the rents due on the Brookshire, Texas facility had been assigned by the plaintiff to a third party. The plaintiff filed suit in the United States District Court for the Western District of Texas, claiming that the USPS had no right to offset rents due on the Brookshire property to satisfy disputes between the plaintiff and the defendant regarding other properties. The case was transferred to the United States Court of Federal Claims on June 2, 1998, originally to the Honorable James T. Turner, and subsequently to the undersigned. Ultimately, for case management purposes, the above-captioned case and a number of other cases between the plaintiff and defendant were consolidated under Case No. 98–594C. The parties have filed cross-motions for partial summary judgment on the limited issue of whether offset of rental payments due on the Brookshire property to cover monies allegedly owed under other contracts between the parties was proper.

## FINDINGS OF FACT

The following facts are undisputed. The plaintiff filed proposed findings of uncontroverted fact, to which the defendant has taken no issue. On August 20, 1980, the USPS and Vanderburg Investments, Inc. executed a lease (the Lease) for property located at 4129 Fifth Street, Brookshire, Texas 77423–9998 (the Brookshire property). At that time, Vanderburg Investments, Inc. was the owner of the Brookshire property.

The Lease provided for a ten-year term, from September 1, 1980 to August 31, 1990, and for four, five-year renewal options. The Lease provided for annual rental payments of $32,820.00 for the first ten years, and annual payments for each of the four, five-year renewal options of $42,440.00, $51,360.00, $60,000.00, and $66,000.00, respectively.

The Lease also includes a provision that permits the lessor to assign the rental payments to a third party provided certain requirements are met. Specifically, the Lease states:

18. Assignment of Claims

(a) If this agreement provides for payments aggregating $1,000 or more, claims for moneys due or to become due the Lessor from the Postal Service under this Lease may be assigned to a bank, trust company, or other financing institution, including any Federal lending agency, and may thereafter be further assigned and reassigned to any such institution. Any such assignment or reassignment shall cover all amounts payable under this Lease and not already paid, and shall not be made to more than one party except that any such assignment or reassignment may be made to one party as agent or trustee for two or more parties participating in such financing. No assignment or reassignment will be recognized as valid and

binding upon the Postal Service unless a written notice of the assignment or reassignment, together with a true copy of the instrument of assignment, is filed, with (i) the Contracting Officer, (ii) the surety or sureties upon the bond or bonds, if any, in connection with this lease; and (iii) the disbursing officer, if any, designated in this lease to make payment, and the Contracting Officer has acknowledged the assignment in writing.

(b) Assignment of this lease or any interest in this lease other than in accordance with the provisions of this clause shall be grounds for annulment of the lease at the option of the Postal Service.

On October 16, 1980, Vanderburg Investments, Inc. sold the Brookshire property to Brookshire U.S. Post Office Investors, Ltd., L. Cletus Brown, Jr., General Partner. On May 1, 1989, the Lease was amended to provide for a new rental rate for the first five-year option. Bill Wright, the USPS Real Estate Manager, executed the Lease Amendment on behalf of the USPS. The Lease was amended again, effective May 15, 1995, to increase the rental rate for the second five year renewal option and to include a Tax Clause Rider. On June 5, 1989, the USPS exercised the first of the five-year renewal options, extending the term of the lease until August 31, 1995. Mr. Wright executed the Exercise of Renewal Option on behalf of the USPS. On March 4, 1992, Brookshire U.S. Post Office Investors, Ltd. conveyed the Brookshire property to L. Cletus Brown, Jr.

Effective July 31, 1992, Mr. Brown sold the Brookshire Property to J. Leonard Spodek, dba Texas Postal Holdings, by Special Warranty Deed. As consideration for the sale of the Brookshire property, Mr. Spodek executed and delivered a promissory note to Mr. Brown in the amount of $138,505.28. As set forth in the Special Warranty Deed, the promissory note was to be secured, in part, by "an Assignment of Leases and Rents of even date herewith from Grantee to Grantor," until the principal and interest on the promissory note was paid. As of this date, the assignment of rents in the Special Warranty Deed is still in effect between Mr. Spodek and Mr. Brown, since the promissory note has not been fully paid. The purpose of the agreement to assign rents was to secure Mr. Spodek's indebtedness to Mr. Brown as a result of his acquisition of the Brookshire property.

On September 16, 1992, Mr. Brown sent a letter to Mr. Wright, Real Estate Manager of the USPS. Mr. Spodek also received a copy of this letter. Mr. Brown attached several documents to the letter to Mr. Wright, including, among others, a copy of the Special Warranty Deed and a copy of the Power of Attorney to Receive Rent from Mr. Spodek to Mr. Brown. Mr. Brown's letter notified the USPS that the Brookshire Property had been transferred to Mr. Spodek and that under the Special Warranty Deed Mr. Spodek had assigned rents due on the property to Mr. Brown. Specifically, the letter states:

Under the terms of the sale, I am to receive all rents due from U.S. Postal Service, until further notice that the Mortgage I hold has been paid.

I have attached the following items, which I understand you require to make lease transfer and authorized payments be made to my favor.

. . .

3. Deed from L. Cletus Brown, Jr., to J. Leonard Spodek, dba Texas Postal Holdings—Recorded.

. . .

6. Power of Attorney To Receive Rent For Post Office Quarters *P.S.* Form 7301 from Spodek to L. Cletus Brown, Jr. . . .

. . .

The bottom line is that checks should be made to L. Cletus Brown, Jr.

The USPS acknowledged Mr. Spodek's assignment of rents to Mr. Brown. The USPS sent two letters to Mr. Brown, in which it named Mr. Brown as the payee for rents due on the Brookshire Property. Since September 16, 1992, the USPS has made all rent checks on the Brookshire Property payable to Mr. Brown and has mailed the checks directly to Mr. Brown. The USPS has never sent a payment for rents on the Brookshire Property to Mr. Spodek. However, on various dates, the USPS has withheld rental

payments on the Brookshire Property and has setoff amounts it claims Mr. Spodek owes on other lease agreements against the rental payments normally sent to Mr. Brown. In the instant cross-motions for partial summary judgment, the validity of the setoff is at issue.

## DISCUSSION

Summary judgment in this court should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56 is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ. P.) and is similar both in language and effect. Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

RCFC 56(c) provides that in order for a motion for summary judgment to be granted, the moving party must demonstrate that the moving party is entitled to judgment as a matter of law and that there are no genuine issues of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Avenal v. United States*, 100 F.3d 933, 936 (Fed.Cir.1996) *(reh'g denied)*; *Creppel v. United States*, 41 F.3d 627, 630–31 (Fed.Cir.1994); *Meyers v. Asics Corp.*, 974 F.2d 1304, 1306 (Fed.Cir. 1992); *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. 674, 679 (1990), *aff'd*, 944 F.2d 885 (Fed.Cir.1991). Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lane Bryant, Inc. v. United States*, 35 F.3d 1570 (Fed.Cir.1994). Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505. Summary judgment is appropriate when the sole dispute concerns the interpretation of a government contract, a question of law. *See Olympus Corp. v. United States*, 98 F.3d 1314, 1316 (Fed.Cir.1996).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. 2505; *see, e.g., Ford Motor Company v. United States*, 157 F.3d 849, 854 (Fed.Cir.1998) (the nature of a summary judgment proceeding is such that the trial judge does not make findings of fact). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250–52, 106 S.Ct. 2505. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *See, e.g., Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In such a case, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. at 587–88, 106 S.Ct. 1348; *Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1463 (Fed. Cir.1998) *(reh'g denied)*; *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985). In the case of parties making cross-motions for summary judgment, each motion must be judged independently and the court must view the evidence in the light most favorable to the other

party. *See Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir. 1987).

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Conroy v. Reebok Int'l, Ltd.,* 14 F.3d 1570, 1575 (Fed.Cir.1994) *(reh'g denied); Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States,* 20 Cl.Ct. at 679. If the moving party makes such a showing, the burden then shifts to the nonmoving party to demonstrate that a genuine factual dispute exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. *See Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. 2548; *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States,* 20 Cl.Ct. at 679.

Pursuant to RCFC 56, a motion for summary judgment may succeed whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. 2548. Generally, however, in order to prevail by demonstrating that a genuine issue for trial exists, the nonmoving party will need to go beyond the pleadings by use of evidence such as affidavits, depositions, answers to interrogatories and admissions. *Id.*

The fact that both parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, however, does not relieve the court of its responsibility to determine the appropriateness of summary disposition in the particular case. *Prineville Sawmill Co., Inc. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987)). "[S]imply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.,* 401 F.2d 689, 692 (4th Cir.1968), *cert. denied,* 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969); *see also Levine v. Fairleigh Dickinson Univ.,* 646 F.2d 825, 833 (3d Cir.1981); *Home Ins. Co. v. Aetna Casualty & Sur. Co.,* 528 F.2d 1388, 1390 (2d Cir.1976). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment. The making of such inherently contradictory claims, however, does not establish that if one is rejected the other is necessarily justified. *Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 245 (3d Cir.1968); *Bataco Indus., Inc. v. United States,* 29 Fed.Cl. 318, 322 (1993), *aff'd,* 31 F.3d 1176 (Fed.Cir.1994). The court must evaluate each party's motion on its own merit, taking care to draw all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors, Inc. v. United States,* 812 F.2d at 1391.

In the above-captioned case, the parties agree that summary judgment is appropriate and that there are no material issues of fact in dispute. Moreover, no material issues of disputed fact have been identified by the court. The parties have filed cross-motions for summary judgment which are ripe for resolution.

This case arises out of a question of interpretation of a lease agreement between the plaintiff, Mr. Spodek, and defendant, USPS, for property leased in Brookshire, Texas.[1] Clause 18 of the Lease between the Postal Service and the owner of the property provides that the Lessor may assign rents to a third party if certain requirements are met. Upon purchasing the Brookshire, Texas property, Mr. Spodek undertook to assign the rents due to Mr. L. Cletus Brown, the former owner and former lessor of the Brookshire property, as consideration for a loan used to purchase the property. The

---

1. The only copy of the Lease in the record is between the USPS and Vanderburg Investments, Inc. Subsequent amendments to the Lease in the record are between L. Cletus Brown, as General Partner of Brookshire U.S.P.O. Investors, Ltd. and the USPS, as well as Nationwide Postal Management together with J. Leonard Spodek and the USPS.

USPS was notified of this arrangement and paid the Brookshire rental due directly to Mr. Brown, and not to Mr. Spodek. When a claim arose against Mr. Spodek for debts allegedly owed to the USPS for repairs performed on other postal facilities in Freeport, Texas and Camden, New Jersey, also leased by the USPS from Mr. Spodek, the USPS offset the amount it claimed was owed to the defendant by Mr. Spodek against the rent to be paid under the Brookshire Lease. The plaintiff argues that because he had assigned the rent due on the Brookshire property to Mr. Brown and the assignment had been acknowledged by the USPS, the defendant was not entitled to setoff the alleged debts on the other properties against rents due under the Brookshire Lease.

■ Generally, in government contracts, assignments are discouraged. The Anti–Assignment Act, 41 U.S.C. § 15(a) (1994), states, "No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States is concerned." *Id.* The statute contains an exception which allows for money due from the United States to be assigned to a "bank, trust company, or other financing institution," provided the assignment adheres to certain requirements. 41 U.S.C. § 15(b). These requirements include the filing of written notice of the assignment, together with a true copy of the instrument of the assignment, with the contracting officer, the surety or sureties upon the bond, and the disbursing officer. 41 U.S.C. § 15(b)(3). Furthermore, the Act prohibits imposition of liability upon the assignee for the debts owed by the assignor to the government. 41 U.S.C. § 15(d). The Lease executed by the USPS and Vanderburg Investments, Inc. for the Brookshire Property contains a provision, Clause 18, which allows for assignment to a "bank, trust company, or other financing institution" under the same notification requirements as included in the Anti–Assignment Act (41 U.S.C. § 15(b) & (c)).

■ Despite the Anti–Assignment Act prohibition, courts have long interpreted the Act as " 'being solely for the government's own benefit and therefore as permitting the government to assent to and recognize an assignment where it seems appropriate.' " *Johnson Controls World Servs., Inc. v. United States,* 44 Fed.Cl. 334, 342 (1999) (quoting *G.L. Christian & Assoc. v. U.S.,* 160 Ct.Cl. 1, 10, 312 F.2d 418, 423 (1963)), *cert. denied,* 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963). Accordingly, courts have recognized the government's ability to waive the statutory preclusion of assignment in its entirety. *Id.* " 'Despite the bar of the Anti–Assignment statute, the government, if it chooses to do so, may recognize an assignment.' " *Tuftco Corp. v. United States,* 222 Ct.Cl. 277, 285, 614 F.2d 740, 745 (1980) (quoting *Maffia v. United States,* 143 Ct.Cl. 198, 203, 163 F.Supp. 859, 862 (1958)). The *Tuftco* court determined that the most effective, although not the exclusive, manner in which to establish government recognition of an assignment was for the three parties to enter into a novation agreement. *Tuftco Corp. v. United States,* 222 Ct.Cl. at 286, 614 F.2d at 745. However, in the absence of such an agreement, the court stated:

[I]t is unnecessary to identify any one particular act as constituting recognition of the assignments by the Government. It is enough to say that the totality of the circumstances presented to the court establishes the Government's recognition of the assignments by it's knowledge, assent, and action consistent with the terms of the assignments.

*Id.* at 746. accord, *Johnson Controls World Servs. v. United States,* 44 Fed.Cl. 334, 345 (1999). The government's recognition of an assignment establishes the requirement of "privity of contract" between the government and assignee. *Johnson Controls World Servs. v. United States,* 44 Fed.Cl. at 345. *Cf.* John Cibinic, Jr., and Ralph C. Nash, Jr., *Administration of Government Contracts* 29 (3d ed.1995) (criticizing *Tuftco Corp. v. United States,* 222 Ct.Cl. 277, 614 F.2d 740 (1980)).

■ The facts in the instant case support the plaintiff's contention that the government knew, assented to, and, therefore, recognized the assignment of rents to Mr. Brown. The

USPS received notification of the assignment in a September 16, 1992 letter sent by Mr. Brown to Mr. Wright, Real Estate Manager of the USPS. The USPS acknowledged the assignment of rents in two letters addressed to assignee, in August 1997. The letters recognized Mr. Brown as the "payee for rents due" on the Brookshire, Texas location. Furthermore, the USPS continuously sent the rental payments to the assignee, Mr. Brown.

The plaintiff also cites to the portion of the Anti–Assignment Act which states that:

> In any case in which moneys due or to become due under any contract are or have been assigned pursuant to this section, no liability of any nature of the assignor to the United States or any department or agency thereof, whether arising from or independent of such contract, shall create or impose any liability on the part of the assignee . . .

41 U.S.C. § 15(d). Asserting that the assignment to Mr. Brown was valid because the USPS recognized the assignment, the plaintiff argues that since the offset was to cover a liability of Mr. Spodek's (the assignor), it was improper for the government to offset from the assigned rental payments due Mr. Brown (the assignee).

■ In response, the government argues that the USPS, however, is not constrained by the Anti–Assignment Act's restriction on setoffs to an assignee because the USPS is statutorily exempted from the Act under 39 U.S.C. § 410 (1994).[2] Under 39 U.S.C. § 410(a), unless specifically identified in the statute, "no Federal law dealing with public or *Federal contracts, property,* works, officers, employees, budgets, or funds . . . shall apply to the exercise of the powers of the Postal Service." (Emphasis added.) The Anti–Assignment Act is not specifically identified in the statute. Moreover, the Anti–

Assignment Act is part of Title 41 on public contracts, and, therefore, is included within the exempted statutes. 41 U.S.C. § 15. A list of federal laws and provisions that are not exempted and do apply to the USPS is included in 39 U.S.C. § 410(b). The Anti–Assignment Act is not included in this list. Therefore, the Anti–Assignment Act does not apply to the USPS.

The Postal Service statute, 39 U.S.C. § 410(a), however, allows for an additional exception which might make otherwise government-wide applicable statutes also applicable to the USPS. Specifically, those federal laws are binding on the USPS provided that "such laws remain in force as rules or regulations of the Postal Service." 39 U.S.C. § 410(a). Plaintiff argues that the principles of the Anti–Assignment Act are in force for the Postal Service in Postal Service Rules and, that, therefore, the Act's restrictions are applicable to the defendant. According to the plaintiff, application of the Anti–Assignment Act is evidenced by USPS materials, such as the USPS Purchasing Manual § 6.4.7, as well as Clause 18 of the Brookshire Lease which permits assignment. The plaintiff states, "Clause 18 of the Lease is evidence that the Anti–Assignment Act 'remains in force' as a USPS rule." The plaintiff also interprets the words of the Purchasing Manual as "rules and regulations of the Postal Service," which allow the Anti–Assignment Act to remain effective for Postal Service contracts.

■ The government acknowledges that the Brookshire Lease, which governs the arrangement between the plaintiff and defendant, contains a provision allowing for assignments. Clause 18 of the Lease is similar to parts of the Anti–Assignment Act. It allows for assignment to a "bank, trust company, or other financing institution" with proper notice and a copy of the instrument of assign-

**2.** In its reply brief, defendant addresses plaintiff's claim of standing and asserts a standing objection, as follows: "[p]laintiff has cited no authority that permits an assignor to bring a lawsuit challenging a setoff against funds paid to an assignee." Accordingly, defendant argues that plaintiff's claim of standing has no merit. The real issue in the cross-motions for partial summary judgment, however, is a question of contract (lease) interpretation regarding the setoff rights of the defendant pursuant to the lease between the plaintiff and the government. Moreover, the cross-motions before the court are in the nature of a motion in limine attendant to ongoing efforts by the parties to resolve this and other of the consolidated cases without the need for trial.

ment sent to the proper authority. The Lease, however, although an agreement entered into by the defendant, does not rise to the level of a "rule or regulation" of the U.S. Postal Service under 39 U.S.C. § 410(a).

■ Similarly, the USPS Purchasing Manual cited by the plaintiff is not a rule or regulation and does not support plaintiff's assertions that the Anti–Assignment Act applies to the USPS because it is included in a rule or regulation of the USPS. In the first place, the instant case deals with the lease of real property and is not a "purchase" subject to the Postal Service Purchasing Manual. The USPS, however, also has a separate Manual on "Realty Acquisition and Management," which directly addresses the assignment of rents and leases. The defendant has provided certain excerpts from the Realty Acquisition and Management Manual, one of which provides that:

> Under the terms of the lease contract, lessors may assign the rents due, or to become due, to an agent, bank, or other financial institution. Any other assignments are subject to the specific provisions of the lease contract, particularly the Assignment of Claims Clause (see Publication 41, 6.4.7).[3]

*Realty Acquisition and Management*, ¶ 722.11. Although the USPS manuals are not agency rules or regulations, under the Realty Acquisition and Management Manual, the USPS appears to permit assignment under similar restrictions as those included in the Anti–Assignment Act, with proper notice to the USPS and acknowledgment of the assignment by the USPS, both in writing. In the instant case, both of these steps were completed in compliance with Clause 18 of the Lease.

The defendant, states "[p]laintiff's assignment of rents to the prior owner, therefore, was in full compliance with clause 18 of the lease."[4] Notably, however, although some of the specific language and principles from the Anti–Assignment Act were incorporated into paragraph 722 of the Realty Acquisition and Management Manual, the manual does not include a clause restricting the setoff of debts owed by the assignor to the assignee, as is included in Anti–Assignment Act. 41 U.S.C. § 15(d). It is reasonable, therefore, to conclude that Congress and the USPS intentionally refrained from disavowing the common law right of offset with regard to the USPS by not inserting a setoff restriction in the manual.

■ The assignment at issue in this case is subject to Clause 18 of the Brookshire Lease. Neither section 722 of the Realty Acquisition and Management Manual nor the Lease terms, include a setoff restriction The Lease permits an assignment "upon the written notice to the contracting officer and the disbursing officer, and upon written acknowledgment of the assignment by the contracting officer." However, the Lease does not contain a restriction on the USPS prohibiting it from offsetting funds owed by the assignor.

The defendant also cites *Applied Companies v. United States*, 144 F.3d 1470, 1476 (Fed.Cir.1998), to explain that especially if the Anti–Assignment Act does not apply to the USPS, "[t]here is no reason to read an implied prohibition against setoffs into the agreement, as it is well settled that the government retains its setoff right unless there is some explicit statutory or contractual provision that bars its exercise." *Id.* at 1476. *See also United States v. Munsey Trust Co.,*

---

3. Publication 41, ¶ 6.4.7, also included as an attachment to the Defendant's Reply Brief, states:

> (a) A supplier may assign money that will be due under a Postal Service contract to a single bank or other financial institution, with the approval of the contracting officer (see Clause B–8, *Assignment of Claims*). Any other attempted assignment may be treated as a breach of contract
>
> (b) Contracting officers may approve any authorized assignment that does not jeopardize

contract performance. See also the discussion of novation agreements in 6.5.4.

4. In order to reach this conclusion, the defendant must be interpreting the Clause 18 Lease phrase and the same phrase in paragraph 722 of the Realty Acquisition and Management Manual, "or other financial institution," as inclusive of an individual such as L. Cletus Brown, who agreed to finance the sale of the Brookshire property to Mr. Spodek in return for an assignment on rentals due on the property.

827

332 U.S. 234, 239, 108 Ct.Cl. 765, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947). This common law right of setoff is preserved by the defendant in the case before the court because there is no restriction, by statute, by rule, or in the Lease, preventing its use. The court agrees with the defendant that there is no prohibiting language which would bar the government from exercising its setoff right against the plaintiff.

## CONCLUSION

The plaintiff's assignment of rents to Mr. Brown was a valid assignment as between Mr. Spodek and Mr. Brown. It was recognized and accepted by both the plaintiff and defendant for the purposes of directing payment of monies due under the Lease. However, because the defendant is not subject to the setoff restrictions of the Anti–Assignment Act, and there was no setoff restriction in the Brookshire Lease, the defendant retains its common law right to setoff. Consequently, the USPS is permitted to offset debts owed by the plaintiff to the defendant on other contracts between these same parties against the rents owed to the plaintiff under the Brookshire Lease.

Based on the foregoing, the plaintiff's motion for summary judgment is **DENIED**. The defendant's motion for summary judgment is **GRANTED**. The parties are to confer and file a joint status report with the court on or before June 22, 2000, regarding how to proceed towards final resolution of the case.

**IT IS SO ORDERED.**