Pete VICARI, General Contractor, Inc., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 99–988C.

United States Court of Federal Claims.

Aug. 16, 2000.

Stephen J. Caire, Metairie, LA, for plaintiff.

Janene M. Marasciullo, Washington, DC, with whom was Acting Assistant Attorney General David W. Ogden, for defendant. Kim Kegowicz, U.S. Coast Guard, of counsel.

## ORDER

MILLER, Judge.

This case, initiated under the Contract Disputes Act of 1976, 41 U.S.C.A. §§ 601–613 (West 1987 & Supp.1999) (the "CDA"), is before the court on defendant's motion to dismiss in part, or, in the alternative, for partial summary judgment. Defendant seeks to dismiss Counts I, III, and IV of plaintiff's complaint for failure to state a claim upon which relief can be granted. The parties briefed the motion as one for summary judgment, *see* RCFC 12(b), and the court resolves it on that basis.[1] The issues turn on whether the items for which plaintiff seeks compensation are barred by various contract clauses or the doctrine of accord and satisfaction. The court rules that defendant is entitled to judgment in its favor because the contract clauses are clear on point and because plaintiff has failed to put forth a genuine issue of material fact that could avoid a prior settlement. Argument is deemed unnecessary.

## FACTS

Pete Vicari, General Contractor, Inc. ("plaintiff"), entered into firm fixed-price Contract No. DTCG47–97–3EFK 01, with the United States Coast Guard (the "USCG") for construction projects on the Coast Guard Station located at Grand Isle, Louisiana. The contract, entered into on March 13, 1997, called for constructing the Unaccompanied Personnel Housing (the "UPH barracks"), road resurfacing, and building of a fire lane.

During the course of performance, adverse weather conditions at the site delayed the project's completion. Consequently, plaintiff submitted a series of requests for equitable adjustment to the contract. On July 22, 1997, plaintiff requested a five-day extension due to rain delays. This request was granted by bilateral Modification 0003 to the contract. By letters dated September 22, 1997, December 9, 1997, and January 15, 1998, plaintiff requested a total of 37 additional days due to adverse weather conditions. Plaintiff's requests resulted in Modification 0004, which extended the contract completion date by 90 days, from April 20, 1998, to July 19, 1998. By letters dated March 2, 1998, and April 20, 1998, plaintiff requested a total of 17 days' extension due to weather delays. The contracting officer issued bilateral Modification 0006 on May 14, 1998, providing for a 19–day extension in satisfaction of weather delays requested in plaintiff's March and April 1998 correspondence. Plaintiff submitted additional requests for three-day, nine-day, one-day, and four-day extensions of time due to weather delays on June 11, August 31, September 8, and September 9, 1998, respectively. The contracting officer denied all requested modifications except for the four-day extension requested pursuant to plaintiff's September 9, 1998 letter. By letter dated October 1, 1998, plaintiff also requested a 22–day extension due to unforeseen weather conditions in September. By letter dated October 15, 1998, plaintiff was granted an 18–day extension. Unilateral Modification 0010 subsequently issued, formally granting plaintiff a 22–day extension reflecting the four-day extension requested on September 9, 1998, as well as the 18–day extension granted by the contracting officer on October 15, 1998.

---

1. Inexplicably, defendant relies on *Olympus Corp. v. United States,* 98 F.3d 1314, 1316 (Fed. Cir.1996), for the proposition that a motion to dismiss is the preferred vehicle when the sole dispute concerns a matter of contract interpreta-tion. The decision stated that summary judgment was appropriate in such circumstances (presumably because matters beyond the pleadings were submitted).

Due to adverse weather conditions of rain and high winds, plaintiff also obtained Builder's Risk/Wind Insurance. Plaintiff maintained this additional insurance on the property from October 1997 through November 1998, incurring expenses of $72,961.71. Plaintiff was not required by the contract to obtain this type of insurance. On June 18, 1998, the contracting officer reimbursed plaintiff for 17 days' coverage at the insured's rate of $95.79 per day, for a total of $1,628.43.

During the course of performance, plaintiff claimed additional reimbursement against the USCG for delays in architect approval and design deficiencies caused by Graves & Carlos Architects Engineers, P.C. ("G & C"). Plaintiff requested modifications to the contract to increase the contract price for the cost of these delays and deficiencies. In the interim the USCG, plaintiff, and G & C negotiated a settlement agreement limited to "structural modifications and associated work on the UPH Barracks." This January 5, 1999 agreement compensated plaintiff in the amount of $111,410.74 and granted plaintiff an extension of time, from January 18, 1999, to March 31, 1999, to complete the project. The agreement recited that it was in full satisfaction of plaintiff's claims against G & C and the USCG for both delays and design deficiencies. In consideration for plaintiff's release of its claims regarding the design deficiencies, the USCG gave up its right to assess liquidated damages for delay in completion of the project.

Count I of the complaint requests compensation for weather delays through August 31, 1998, constituting 58 days at $378.56 per day, for a total of $86,564.42 in damages. Count III seeks reimbursement in the amount of $72,961.71 for costs of obtaining Builder's Risk/Wind Insurance, which plaintiff claims was necessary due to adverse weather conditions at the job site. Specifically, plaintiff seeks the cost of maintaining the additional insurance through November 19, 1998. Count IV arises out of a settlement reached between the USCG, plaintiff, and G & C regarding design deficiencies on the project and claims that the settlement is void on grounds of duress. Plaintiff's claimed losses arising out of design deficiencies total 82 days of delay for which plaintiff estimates damages of $116,729.01.

## DISCUSSION

### 1. *Summary judgment standards*

Summary judgment is proper when no genuine issues of material fact are in dispute and the moving party is entitled to judgment as a matter of law. *See* RCFC 56(c). Genuine disputes over material facts that may significantly affect the outcome of the matter preclude an entry of judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (finding dispute to be genuine if jury could find in favor of non-moving party). In opposing each other's motions, plaintiff and defendant are entitled to "all applicable presumptions, inferences, and intendments," *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984). Yet, because they cross-moved, each party bears the burden of demonstrating entitlement to judgment, as well as the absence of issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Each party must provide evidence that is more than merely colorable in response to the other's motion. *See id.* at 324, 106 S.Ct. 2548 (noting that evidence need not be admissible at trial); *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed.Cir. 1984); *see also Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560 (Fed.Cir.1988). However, mere assertions or conclusory allegations are insufficient, *see SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1116 (Fed.Cir.1985) (noting that non-movant must demonstrate an evidentiary conflict by more than conclusory statements or mere denials), and argument by counsel, unsupported by affidavits, is similarly unavailing. *See Barmag Barmer*, 731 F.2d at 836; *see also Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401, 1404 (Fed.Cir.1984) (holding argument and assertions of counsel cannot substitute for factual statements under oath establishing a genuine material issue of fact).

### 2. *Weather delays*

Count I of the complaint seeks a time extension and compensation for delays in construction completion due to rain and adverse weather conditions, based upon two theories.[2] First, plaintiff argues that the Safety and Health clause of the contract more properly governs plaintiff's claims for compensation, so that a monetary claim is not foreclosed by the Delay clause. Second, plaintiff contends that the contracting officer acted arbitrarily and capriciously in denying its claims for equitable adjustment on the ground that plaintiff failed to document properly weather conditions on the job site. Plaintiff contends that the contract assigned to the contracting officer's technical representative (the "COTR") the duty to establish standards governing the monitoring of weather conditions on the job site. Therefore, plaintiff argues that in the absence of such standard, the weather data reflected in plaintiff's own daily logs should be conclusive.

Defendant counters that the contract's Delay clause 48 C.F.R. (FAR) § 52.249 (1997), which was incorporated by reference into the contract, governs plaintiff's claim. FAR § 52.249–10 provides:

(b) The Contractor's right to proceed shall not be terminated nor the Contractor charged with damages under this clause, if-

(1) The delay in completing the work arises from unforeseeable causes beyond the control and without the fault or negligence of the Contractor. Examples of such causes include (i) acts of God, . . . (x) unusually severe weather; and

(2) The Contractor, within 10 days from the beginning of any delay (unless extended by the Contracting Officer), notifies the Contracting Officer in writing of the causes of delay. The Contracting Officer shall ascertain the facts and extent of delay. If in the judgment of the Contracting Officer, the findings of fact warrant such

action, the time for completing work shall be extended.

Rather than proceed under the clause dealing with adverse weather, plaintiff argues that, in order to comply with the Safety and Health clause of the contract, it was required to keep workers from the job site when dangerous conditions were present. In other words, plaintiff maintains that, because excessive rain presents a danger to the safety of workers on the job site, plaintiff was justified in excluding employees from the project on those days of adverse weather and therefore is entitled to exercise its rights under this portion of the contract in seeking an equitable adjustment to the contract price. Plaintiff reasons that such costs of compliance may be reimbursed pursuant to this clause of the contract. The Safety and Health clause, in pertinent part, directs:

(a) The Contractor shall take all reasonable safety and health measures in performing under this contract and shall, to the extent set forth in the Schedule of the contract, submit a safety plan and a health plan for the Contracting Officer's approval. The Contractor is subject to (i) all applicable Federal, state and local laws, regulations, ordinances, codes, and orders relating to safety and health in effect on the date of this contract; and (ii) shall comply with the Safety and Health Standards, specifications and issuances, reporting requirements, and provisions as set forth in the Schedule of the contract.

■ Although artful, plaintiff's argument ignores general principles of contract interpretation. When interpreting a contract, this court must give the language of the contract "its ordinary meaning." *See Massie v. United States,* 166 F.3d 1184, 1189 (Fed.Cir.1999). Furthermore, the court is cautioned against "an interpretation . . . which leaves a portion [of the contract] inoperative, void, meaningless, or superfluous." *New Valley Corp. v. United States,* 119 F.3d 1576, 1580 (Fed.Cir. 1997).

---

**2.** The court will not consider plaintiff's additional theory of recovery for rain delays based upon differing site conditions. The court does not have jurisdiction to consider this claim, as plaintiff did not submit it to the contracting officer for a final decision. The CDA requires that such claims first be submitted to the contracting officer for a final decision. *See* 41 U.S.C. § 605(a).

■ Notwithstanding the terms of the contract, a contractor may be entitled to damages associated with a delay in performance only if the Government was the cause of such delay. *See T. Brown Constructors, Inc. v. Pena*, 132 F.3d 724, 734 (Fed.Cir. 1997). "It is a general principle of law that neither party to a contract is responsible to the other for damages through a loss occasioned as a result of an act of God, unless such an obligation is expressly assumed." *Turnkey Enter., Inc. v. United States*, 220 Ct.Cl. 179, 187, 597 F.2d 750, 754 n. 11 (1979); *see also Fru-Con Const. Corp. v. United States*, 43 Fed.Cl. 306, 328 (1999), *aff'd*, 2000 WL 973619 (Fed.Cir. July 12, 2000).

■ The plain meaning of the contract establishes that delays arising from severe weather are governed by FAR § 52.249–10, not the Safety and Health clause. To interpret the contract any other way would render FAR provision governing severe weather meaningless and superfluous. The sole remedy for severe weather provided for in FAR § 52.249–10 is a time extension for completion of the project. Moreover, severe weather and rain are acts of God and presumptively not within the control of the USCG. The USCG cannot be held responsible absent clear contractual terms allocating liability for acts of God.

Plaintiff alternatively contends that the contracting officer acted arbitrarily and capriciously in denying certain requests of plaintiff for extensions of time due to weather delays. Defendant responds that plaintiff failed to provide the requisite documentation to support these requests and that published meteorological records indicated normal weather conditions during the days in question. Plaintiff rejoins that the contract did not require requests for additional time extensions to be supported by published records of the National Weather Service. Rather, the contract required the COTR to establish a reliable method for determining site conditions and to monitor conditions on a daily basis, which plaintiff charges he failed to do. Plaintiff kept its own record of weather conditions in a project diary and used this information to document its claims to the contracting officer. The contracting officer ultimately rejected this diary.[3]

■ The contracting officer's decision is reviewed *de novo*.[4] Consequently, "[d]e novo review precludes reliance upon the presumed correctness of the [contractor's] decision." *See Wilner v. United States*, 24 F.3d 1397, 1401 (Fed.Cir.1994). The contractor still bears the burden of proving liability and damages *de novo*. *See id.; see also Assurance Co. v. United States*, 813 F.2d 1201, 1206 (Fed.Cir.1987).

> This means that when the claim being asserted by the contractor is based upon alleged government-caused delay, the contractor has the burden of proving the extent of the delay, that the delay was proximately caused by government action, and that the delay harmed the contractor.

*Wilner*, 24 F.3d at 1401.

■ Plaintiff has established the extent of delay caused by adverse weather conditions. Plaintiff and the USCG exchanged extensive correspondence regarding extensions of time due to weather delays at the job site. For purposes of this motion, the court will assume the validity of all of plaintiff's requests for extensions of time due to weather delays. However, even assuming the correctness of plaintiff's documentation and the failure of the COTR to consider plaintiff's proffered weather records, monetary recovery is precluded both by FAR § 52.249–10 and the decisional law ascribing delay due to acts of God to a cause other than the USCG.

---

**3.** It should be noted that from commencement of performance through September 1998, plaintiff requested a total of 98 days extension for weather delays. Plaintiff was granted 131 days of extension for weather delays through this same period. The court fails to comprehend how plaintiff can contend that adjustment is consistent with an arbitrary and capricious action by the contracting officer.

**4.** The CDA provides that "[s]pecific findings of fact [by the contracting officer] ... shall not be binding in any subsequent proceeding," 41 U.S.C. § 605(a), and that an action in court on a claim "shall proceed *de novo*." 41 U.S.C. § 609(a)(3). *See Olympus Corp.*, 98 F.3d at 1316.

Finally, Modifications 0003 and 0004, granting plaintiff five-day and 90–day extensions, respectively, are bilateral contract modifications and contains substantially the same provision. Modification 0003 recites:

In consideration of the modification agreed to herein as complete equitable adjustment, the contractor hereby releases the Government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances giving rise to the proposal for adjustment including all claims for impacts, delays, and disruptions.

Defendant contends that recovery for weather delays during 1997 should be barred because an executed bilateral contract modification that contains no reservation of rights constitutes an accord and satisfaction. *See Cannon Constr., Co. v. United States,* 162 Ct.Cl. 94, 100, 319 F.2d 173, 177 (1963). Assuming, as the court has concluded, that the Delay clause controls and that time extensions are the only relief available, plaintiff has not refuted defendant's argument as to the preclusive effect of the bilateral modifications.

### 3. *Builder's Risk/Wind Insurance*

Due to adverse weather conditions, plaintiff did incur property damages at the job site. However, these were insured. In Count III plaintiff seeks compensation for the costs of maintaining Builder's Risk/Wind Insurance on the construction project. Plaintiff alleges that while not required by the contract, special circumstances—principally bad weather—warranted this additional coverage.[5] The contract required the contractor to retain insurance at its own expense. FAR § 52.228–5, incorporated by reference into the contract, provides in pertinent part:

(a) The Contractor shall, at its own expense, provide and maintain during the entire performance period of this contract, at least the kinds and minimum amount of

insurance required in this schedule or elsewhere in the contract.

The contract also provided that the contractor carry at its own expense worker's compensation, employer's liability, general liability, and automobile liability insurance. The general liability clause states that property damage liability shall be required only in special circumstances as determined by the agency. The USCG never expressly made this determination.[6]

Plaintiff offers the creative argument that it is entitled to reimbursement for obtaining Builder's Risk/Wind Insurance under clause H.1 of the contract, Warranty of Construction. This provision places the burden on the contractor to remedy any damage to government property that occurs within one year of completion of the project if such damage is the result of "(1) [t]he Contractor's failure to conform to contract requirements; or (2)[a]ny defect of equipment, material, workmanship, or design furnished." Plaintiff posits that the costs associated with carrying Builder's Risk/Wind Insurance were not foreseeable during bid preparation.

■ Again, the court must determine which section of the contract governs the parties' rights and duties with respect to Builder's Risk/Wind Insurance. The same general principles of contract interpretation apply. Particularly apt is the rule that "[w]here specific and general terms in a contract are in conflict, those which relate to a particular matter control over the more general language." *Hughes Communications Galaxy v. United States,* 998 F.2d 953, 958 (Fed.Cir.1993).

■ In order to give all provisions of the contract their proper effect, FAR § 52.228–5 must be interpreted as governing the parties' obligations regarding insurance on the job site. The contract expressly indicates the

---

**5.** According to defendant, the motivating factor in plaintiff's obtaining the additional Builder's Risk/Wind Insurance was to comply with plaintiff's surety's requirements. The court will not speculate as to whether the insurance for which plaintiff now claims reimbursement was required for this purpose.

**6.** The undisputed facts indicate that by a communication dated June 18, 1998, the contracting officer did compensate the contractor for the costs of carrying insurance on certain days where a time extension was granted for weather, although she did not make a "formal" finding as to the necessity of additional insurance.

types of necessary insurance and stipulates that maintaining any insurance is the responsibility of the contractor. Plaintiff may not circumvent the clear terms of the contract by claiming that the Warranty of Construction clause entitles it to reimbursement for Builder's Risk/Wind Insurance costs. This warranty protects the USCG, not plaintiff. In any event, the Warranty of Construction governs damages in two specified circumstances outlined above, neither of which occurred. Damages caused by adverse weather conditions do not come within either category.

### 4. Settlement agreement

In Count IV of the complaint, plaintiff advances that the January 5, 1999 Agreement of Compromise, Settlement and Release executed by plaintiff, G & C, and the USCG is void because it was executed under conditions of duress. Plaintiff argues that it was subjected to severe economic distress caused by the USCG's withholding of liquidated damages due, in addition to financial losses caused by design deficiencies on the project. Additionally, plaintiff charges that the USCG intentionally denied its claims for equitable adjustment shortly before the settlement negotiations were to take place, so as to put added pressure on plaintiff to settle its claims against the USCG and C & G.

■ The requirements to establish duress with regard to the execution of a contract are exacting. See Fruhauf Southwest Garment Co. v. United States, 126 Ct.Cl. 51, 62–64, 111 F.Supp. 945 (1953). To invalidate contract modifications on the ground of economic duress, the contractor must show that government coercion was the cause of the contractor's financial distress and that the Government employed extra-contractual means to effect this distress. See Liebherr Crane Corp. v. United States, 810 F.2d 1153, 1158 (Fed.Cir.1987); see also Niko Contracting Co. v. United States, 39 Fed.Cl. 795, 802 (1997), aff'd, 173 F.3d 437 (Fed.Cir.1998). While the Government may not use unlawful

means to coerce a contractor to take actions contrary to a contractor's wishes, "the Government is not precluded from using influence that is within the bounds of the contract to effect its goals." See Niko, 39 Fed.Cl. at 802. "In other words, the Government may freely exercise its legitimate powers to enforce the provisions of the contract." Id.

■ The facts and circumstances surrounding the execution of the settlement agreement do not indicate that plaintiff involuntarily entered into the agreement. The intervening time between negotiations and plaintiff's signing of the contract, approximately eight days, provided plaintiff with ample time to independently review the agreement and explore alternative courses of action.[7] Furthermore, plaintiff does not aver that the Government exercised any influence over plaintiff that was beyond the USCG's rights under the original contract. See SRI Int'l v. Matsushita Elec. Corp., 775 F.2d 1107, 1116 (Fed.Cir.1985) (noting that opponent must demonstrate evidentiary conflict by more than conclusory statements or mere denials). Plaintiff fails to raise a genuine issue of material fact that rises to the level of government coercion.

■ Although plaintiff has failed to oppose summary judgment as required with respect to its claims of duress, the settlement agreement still must rise to the level of an enforceable contract. A claim is barred by the doctrine of accord and satisfaction when four elements are present—"proper subject matter, competent parties, meeting of the minds ... and consideration." Mil–Spec Contractors, Inc. v. United States, 835 F.2d 865, 867 (Fed.Cir.1987). "Generally, an executed bilateral contract modification that contains no reservation of rights constitutes an accord and satisfaction." Valcon II, Inc. v. United States, 26 Cl.Ct. 393, 397 (1992) (citing cases). The settlement agreement, entered into between the USCG, plaintiff, and C & G, constitutes an accord and satisfaction.

---

7. As measured by plaintiff's complaint, the settlement entered into between the parties was not unreasonable, at least facially. In Count IV plaintiff seeks damages of $116,729.01 for delays resulting in design deficiencies for the UPH barracks. The agreement which plaintiff now claims is void provided plaintiff with $111,401.74 in damages as full and final settlement of damages caused by design deficiencies.

As to the first element, the subject matter of the settlement agreement properly governs the designs of the UPH barracks. The parties had a dispute regarding these designs, the deficiencies of which caused delays on the project's completion. The court would expect parties to resolve such disputes through a settlement.

Both parties to the contract were competent. The only facts that would lead the court to determine otherwise are the allegations of duress in plaintiff's complaint. However, the court has already determined that plaintiff has failed to oppose a grant of summary judgment by raising the requisite issues of material fact.

As to the third element, the parties were aware of the subject matter of the contract. They chose to memorialize this in the document entitled "Agreement of Compromise, Settlement and Release," which both plaintiff and the USCG signed. Therefore, the court concludes that a meeting of the minds occurred with regard to the settlement agreement.

Regarding the last element, sufficient consideration was given by both parties to the contract. The settlement agreement provided plaintiff with $111,401.74 in damages as full and final settlement of damages caused by design deficiencies. In exchange, the USCG gave up any right to assess liquidated damages against the contractor. Accordingly, the court finds and concludes that the settlement agreement and the resulting contract modification (Modification 00012) constituted an accord and satisfaction with respect to damages claimed as a result of design deficiencies related to the UPH barracks.

### CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. Defendant's motion for summary judgment is granted with respect to Counts I, III, and IV of the complaint.

2. The parties shall file a Joint Status Report by August 31, 2000, proposing a course for further proceedings with respect to the remaining Count II and a schedule therefor.